IN THE DISTRICT COURT OF THE UNITED STATES FOR
THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Michael Mendelow, Plaintiff, v. Shriners Hospitals for Children, Defendant. | ) | Case No. 6:26-cv-02191-SAC **OPINION AND ORDER** |

This matter is before the Court on a Motion to Dismiss filed by Defendant Shriners Hospitals for Children ("Shriners") pursuant to Federal Rule of Civil Procedure 12(b)(6), ECF No. 16, and a Motion to Stay filed by Shriners, ECF No. 24. Plaintiff Michael Mendelow ("Dr. Mendelow") filed a response to the Motion to Dismiss, ECF No. 21, and Shriners filed a reply, ECF No. 25. For the reasons stated below, Shriners' Motion to Dismiss is DENIED.

## BACKGROUND[1]

Dr. Mendelow, a former surgeon with Shriners, brings this suit alleging he was terminated in retaliation for objecting to and refusing to adopt "harmful and unethical practices" mandated by Shriners. *See generally* ECF No. 12. Dr. Mendelow began practicing with Shriners in January 2012 at its hospital in Greenville, South Carolina (the "Hospital"), serving as a pediatric orthopedic surgeon. *Id.* ¶¶ 42, 50. He was "highly regarded and recognized as an outstanding physician" at Shriners and was the most productive spine surgeon in the entire Shriners system from 2014 to 2016. *Id.* ¶¶ 53-55.

In February 2015, Shriners hired John Michael Wattenbarger, MD, as its new Chief of

[1] All facts in this Background section are taken directly from the Amended Complaint and are accepted as true for the purposes of this Motion.

Staff. *Id*. ¶¶ 3, 52. According to Dr. Mendelow, Shriners had begun shifting the Hospital's business model to prioritize cost containment over its pediatric patients as early as 2008, and its employment of Dr. Wattenbarger as Chief of Staff furthered this shift. *Id*. ¶¶ 57, 62-73. Shriners engaged in a number of cost-saving measures, including pressuring Dr. Mendelow and other clinical staff to increase the duration of patients' treatment and overnight admittance, and denying him necessary resources for medical procedures. *Id*. ¶¶ 84, 94, 96. For example, Dr. Mendelow alleges Dr. Wattenbarger limited the number of surgeries he could perform using a high-cost metal rod regardless of whether the rod was medically necessary; "essentially demand[ed]" he conform to lower surgical thresholds rather than emphasize non-surgical options for treatment; pressured him to forego accurate and complete documentation in patient charts to allow bills to be sent early; and mandated an arbitrary surgical deadline of 5:00 p.m., resulting in some second stage surgeries. *Id*. ¶¶ 97-102, 107-09, 113-14, 119-24.

Over the years, Dr. Mendelow "repeatedly objected" to Dr. Wattenbarger's new policies — both in general and those targeting Dr. Mendelow specifically — and in 2019 filed a grievance concerning the "unethical and unsafe conditions" Dr. Wattenbarger imposed on Dr. Mendelow's medical practice. *Id*. ¶¶ 136-38. As a result of his complaints, Dr. Mendelow alleges he "faced a barrage of retaliation designed to impose an ethical catch-22": he could either follow the new rules despite the unlawful impact on patient care *or* continue to provide competent medical care in violation of the rules. *Id*. ¶ 144. Dr. Mendelow was terminated on June 22, 2023. *Id*. ¶ 191.

Dr. Mendelow filed his complaint in the Court of Common Pleas for Greenville County on May 5, 2026. ECF No. 1-1. Shriners timely removed the action and filed a motion to dismiss. ECF Nos. 1; 10. Dr. Mendelow filed an Amended Complaint on June 26, 2026, asserting a single cause of action for wrongful discharge in violation of public policy. ECF No. 12 ¶¶ 205-12. He

alleges Shriners' actions violate public policy because Dr. Mendelow's termination was in retaliation for "his refusal to violate basic standards of competent and ethical medical care," citing provisions in the South Carolina Code of Medical Ethics requiring medical professionals to act in the best interest of their patients. *Id*. ¶¶ 74-82, 206. He seeks compensatory and punitive damages, as well as attorneys' fees and costs. *Id*. at 34. Shriners filed the instant Motion to Dismiss on July 10, 2026. ECF Nos. 16; 16-1. On July 31, 2026, Shriners filed a Motion to Stay, asking that the Court stay discovery until after it has ruled on the Motion to Dismiss. ECF No. 24.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state only "a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. In other words, the plausibility standard requires a petitioner to articulate facts that, when accepted as true, demonstrate that the petitioner has stated a claim that makes it plausible the petitioner is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Rule 8 of the Federal Rules of Civil Procedure requires a party to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 8(a), "specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citation modified).

## ANALYSIS

Mendelow asserts a single claim for wrongful discharge in violation of public policy ("WDPP"), alleging he was terminated after objecting to and refusing to abide by Shriners' administrative policies that prevented him from practicing medicine in compliance with the South Carolina statutes and regulations establishing baseline standards of competent and ethical medical care. ECF No. 12.

### I. WDPP Claims Generally

In South Carolina, "[a]n at-will employee may be terminated at any time for any reason or for no reason, with or without cause." *Mathis v. Brown & Brown of S.C., Inc.*, 698 S.E.2d 773, 778 (S.C. 2010). However, the Supreme Court of South Carolina created a public-policy exception to this rule. *Ludwick v. This Minute of Carolina, Inc.*, 337 S.E.2d 213, 216 (S.C. 1985). The court held that a WDPP claim arises when "retaliatory discharge of an at-will employee constitutes violation of a clear mandate of public policy." *Id.* The court further held that this public-policy exception "is invoked when an employer requires an at-will employee, as a condition of retaining employment, to violate the law." *Id.*

Since this exception was created, "[c]ourts have invoked the public policy exception in two instances: (1) where an employer requires an employee, as a condition of continued employment, to break the law, and (2) where an employer's termination is itself illegal." *Taghivand v. Rite Aid Corp.*, 768 S.E.2d 385, 387 (S.C. 2015) (citation modified). Although the public-policy exception is not specifically limited to these two situations, it "has not been extended beyond situations where the termination is in retaliation for an employee's refusal to violate the law at the direction of his employer." *Dockins v. Ingles Markets, Inc.*, 413 S.E.2d 18, 18 (S.C. 1992).

## II. Dr. Mendelow's WDPP Claim

In its Motion, Shriners argues the Amended Complaint amounts to no more than a catalogue of various professional disagreements and differences of opinion, and that termination based on Dr. Mendelow's internal reports of his disagreements cannot serve as the basis for a WDPP claim. ECF No. 16-1 at 6-9. Dr. Mendelow, on the other hand, argues his claim is not based only on professional disagreements and that the well-pleaded facts of the Amended Complaint establish a WDPP claim based on his termination for "refus[ing] to violate his sworn oath and legal obligation" to prioritize patient care. ECF No. 21 at 6, 6-18.

The crux of the issue for the purposes of this Motion appears to be whether Dr. Mendelow has sufficiently alleged he was terminated for refusal to violate the law, rather than for simply complaining of professional disagreements. Though the Court recognizes the Amended Complaint contains extensive narrative regarding the professional dispute between Dr. Mendelow and Dr. Wattenbarger, the heart of Dr. Mendelow's claim, as pled, is that he was terminated for refusing to adopt Shriners' allegedly unethical and unlawful practices in violation of the South Carolina Code of Medical Ethics. *See, e.g.*, ECF No. 12 ¶¶ 30 (Shriners' "campaign of retaliation escalated over a period of years and ultimately culminated in [Dr. Mendelow's] unlawful, retaliatory termination after he refused to adopt its harmful and unethical practices in his own medical practice"), 34 (Dr. Mendelow "was left with two options: concede to [Shriners'] demands at the expense of his patients or continue to advocate for his patients and provide the expected ethical standards of care . . . . [Dr. Mendelow] chose the latter and was subsequently fired for failing to 'fit in' with the Hospital's culture"), 202 (Shriners "supposedly terminated [Dr. Mendelow's] employment because he no longer 'fit in' with the Hospital's culture. But the differences between [Dr. Mendelow's] medical practice and [Shriners'] expectations are solely attributable to [Dr.

Mendelow's] refusal to compromise competent and honest medical care of his patients"), 206 (Shriners "terminat[ed] [Dr. Mendelow's] employment in retaliation for his refusal to violate basic standards of competent and ethical medical care"), 74-81 (citing South Carolina's Code of Medical Ethics requiring physicians to act in the best interest of their patients).

Assuming without deciding that a violation of the South Carolina Code of Medical Ethics is considered a violation of the law for the purposes of a WDPP claim, the Court finds that, for purposes of deciding a motion to dismiss, Dr. Mendelow is not required to definitively prove Shriners' actions required him to violate the law. Rather, Dr. Mendelow's allegations must only give Shriners' "fair notice of what the claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93. Here, the Amended Complaint does not simply contain bald allegations of "illegal" or "unethical" conduct, but sets forth detailed descriptions of conduct forced upon and refused by Dr. Mendelow that could conceivably violate the medical ethics code. *See, e.g.*, ECF No. 12 ¶¶ 109-10 (alleging Dr. Mendelow refused to conform to lower surgical thresholds because "patient care standards and honest dealings with patients require doctors to present patients all their available options for treatment"); ¶¶ 152-64 (alleging Dr. Mendelow refused to abide by arbitrary 5:00 p.m. surgical end time because it was unethical and did not serve the patients' best interests).

Thus, the Court concludes Dr. Mendelow has pled sufficient facts to plausibly allege a WDPP claim: he "was asked by [his] employer to violate the law, [he] refused to do so, and [he] was terminated as a result. *See Woods v. Stoba USA Corp.*, No. 2:18-CV-3329-DCN, 2019 WL 2098255, at *3 (D.S.C. May 14, 2019) (denying motion to dismiss WDPP claim where there was at least one allegation that the plaintiff's refusal to allow improper and illegal practices of the business resulted in her termination). The Court accordingly denies the Motion to Dismiss.

## CONCLUSION

For these reasons, Shriners' Motion to Dismiss [ECF No. 16] is **DENIED** and Shriners' Motion to Stay [ECF No. 24] is **FOUND AS MOOT**.

**IT IS SO ORDERED**.

United States District Judge

September 23, 2026
Greenville, South Carolina